IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Regina Hollar,                                              Case No. 3:06CV01084

        Plaintiff

    v.                                                     ORDER

RJ Coffey Cup, LLC et al.,

        Defendants.

    Plaintiff, Regina Hollar, alleging sexual harassment and constructive discharge, sues her former employer, RJ Coffey Cup, LLC (Coffey Cup), and her former supervisor, Roy Coffey. Coffey is part owner of Coffey Cup, a restaurant in Wapakoneta, Ohio.

    Hollar assets five claims, each of which she asserts against one or both defendants. In Count One, Hollar alleges that both Coffey and Coffey Cup violated O.R.C. § 4112.02 (Ohio Civil Rights Act). Hollar claims that Coffey's conduct constituted quid pro quo sexual harassment and created a hostile work environment. In Count Two, Hollar sues Coffey Cup for quid pro quo and hostile work environment sexual harassment under 42 U.S.C. § 2000e-5(e) (Title VII).[1] In Count Three, Hollar sues Coffey for assault and battery. In Count Four, Hollar sues Coffey Cup for negligent supervision. In Count Five, Hollar sues both defendants for wrongful discharge in violation of Ohio public policy.

---

[1] In her complaint, Hollar also sued Coffey under Title VII. She later dropped this claim.

1

Pending are: 1) Coffey's motion for summary judgment on Counts I and V;[2] and 2) Coffey's motion to strike paragraphs 48, 64, and 78 of the affidavit submitted by Hollar in opposition to defendants' summary judgment motion. For the following reasons, Coffey's motion to strike shall be denied in full, and Coffey's motion for summary judgment shall be granted in part and denied in part.

## I. Background

Coffey Cup is a restaurant owned by Coffey and John Schlenker. Coffey's wife and Schlenker's wife worked at the restaurant, and employees regarded them, as they did Coffey, as their supervisors. Hollar joined Coffey Cup in December, 2001 after she separated from her husband. She worked as a prep cook under the immediate supervision of Coffey, who was in charge of the kitchen.

From December, 2001 to August, 2002, Coffey frequently leaned into Hollar and rubbed his body against hers; commented about her shape, hair, and the way she smelled; and described details of his unhappy marriage.[3] Hollar never complained to anyone about this behavior.

Hollar quit her job at Coffey Cup in August, 2002 after reconciling with her husband. She does not claim that this decision was motivated by Coffey's alleged harassment.

In March, 2003, after again separating from her husband, Hollar returned to Coffey Cup. From March, 2003 to December, 2004, she worked as a cook Monday through Friday and every other Saturday until 2:00 p.m. Coffey saw Hollar when he worked weekends, but because he did not arrive until 4:00 p.m. during the week, Hollar had limited contact with him during that period. When Hollar worked with Coffey, he continued his previous behavior.

---

[2] No motions by defendant Coffey Cup are pending.

[3] These and other allegations of fact are viewed for purposes of this opinion in a light most favorable to the plaintiff.

Hollar was promoted to day manager in December, 2004. As a result of this promotion, she remained at the restaurant after 2:00 p.m., when her shift as a cook was over, to perform her managerial duties. As a result, Hollar was often at the restaurant until 4:00 p.m. or later, when Coffey arrived. Her managerial duties, which included arranging catering jobs and ordering supplies, involved frequent contact with Coffey because he supervised the kitchen.

From December, 2004 to May, 2005, Coffey's unwelcome conduct significantly escalated. Coffey offered to rub Hollar's feet and back and told her that he wanted to make her feel good. He also told her that he wanted to get rid of his wife and that he wanted Hollar to move in with him. Coffey invited Hollar to his house when his wife was at work, and often invited himself over to Hollar's apartment. Hollar allowed him to enter her apartment only when another person was present. He left gifts for her in her car. He called her at Coffey Cup every day and would whisper into the phone that he missed her. Coffey also told her that he was the only reason she had a job at Coffey Cup and that he was protecting her from being fired by his wife and Schlenker's wife.

To attempt to deter Coffey, Hollar asked her boyfriend to visit the restaurant during the late afternoons, when Hollar worked with Coffey. The presence of Hollar's boyfriend appeared to anger Coffey, and Coffey told Hollar that her boyfriend was no longer permitted to come to the restaurant.

On May 5, 2005, Coffey asked Hollar to go with him to the cooler in the back of the restaurant to show her something about "the ordering." [Doc. 43-2, ¶ 59]. Once there, Coffey grabbed Hollar and pulled her close to him. He then "stuck his tongue down her throat." [Doc. 43-2, ¶ 61]. Hollar pushed him away and told him to stop, and he responded that she was "just scared." [Doc. 43-2, ¶ 63]. He then opened the cooler door and told her to enter the cooler with him. She

instead left the cooler, went to the front of the restaurant to get her things, and left the restaurant. She was upset and vomited next to her car.

The next day, Hollar called in sick and arranged a meeting with the Schlenkers for that evening. Hollar described the previous day's events and Coffey's earlier behavior toward her. She told them that she was afraid that she would lose her job and that she could no longer work with Coffey.

The Schlenkers laughed at Hollar's complaints and Mrs. Schlenker joked that Coffey was "an old hillbilly" and said that "he would not hesitate to bring out a gun." [Doc. 43-2, ¶ 77]. Mrs. Schlenker suggested that Hollar could work only morning shifts and not interact with Coffey anymore, and she told Hollar that she would call her the next day.

Late the next day, Hollar applied for unemployment benefits. Mrs. Schlenker never called or contacted Hollar.

Hollar later filed a charge of sex discrimination with the EEOC, which issued her a Right to Sue letter on April 13, 2006.

## II. Discussion

### A. Motion to Strike

#### 1. Paragraph 48

Coffey moves to strike Paragraph 48 of Hollar's affidavit, which states: "his behavior interfered with my work." Coffey argues that this paragraph should be stricken as a legal conclusion. I disagree. This statement does not involve the "application or interpretation of law," but represents Hollar's interpretation of her personal experiences. *F.R.C. Int'l. Inc. v. U.S.*, 278 F.3d 641, 643 (6th Cir. 2002) (quoting Black's Law Dictionary (7th ed.1999)).

4

Coffey correctly points out that whether harassment unreasonably interferes with Hollar's work is one factor in determining whether a hostile work environment existed. Hollar's mere assertion, however, that Coffey's behavior interfered with her work cannot establish this factor. Hollar must show that Coffey's harassment *unreasonably* interfered with her work. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In this statement, Hollar provides only one piece of information the fact-finder may consider in determining whether Hollar has established one element of her claim.

Thus, Coffey's motion to strike Paragraph 48 of Hollar's affidavit shall be denied.

## 2. Paragraph 64

Next, Coffey moves to strike paragraph 64 of Hollar's affidavit, which states that she "rushed out of the cooler[, got her] purse[,] and left the restaurant." Coffey claims that this paragraph directly contradicts Hollar's earlier deposition testimony. In her deposition, Hollar stated that she "walked out of the cooler" and went to the front of the restaurant, where she was asked by another cook what was wrong. She then stated that she walked to a different area of the restaurant for a minute with another co-worker, Kristina Lambert, to get some papers that Lambert had brought in for her, and walked out of the restaurant.

First, I must determine whether this statement in Hollar's affidavit contradicts Hollar's deposition testimony. *Aerel, S.R.L. v. PCC Airfoils*, 448 F.3d 899, 908-09 (6th Cir. 2006). Some degree of contradiction is permissible as long as the affidavit is "not inherently inconsistent" with the deposition testimony. *Id* at 908 (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893-94 (5th Cir. 1980)). If a contradiction exists, I must determine whether Hollar has attempted to create

a sham fact issue. *Id.* If I find that no direct contradiction exists and that Hollar has made no attempt to create a sham fact issue, I must deny the motion to strike. *Id.*

I disagree that Hollar's affidavit directly contradicts her deposition testimony. Hollar could have both "walked" and "rushed" out of the cooler, and as Hollar points out in her brief, she was not asked during her deposition how quickly she left the cooler. While she did not leave the restaurant immediately after leaving the walk-in cooler, she only paused to gather her purse, keys, and papers, taking only a few minutes to leave. This does not directly contradict Hollar's testimony that she left the restaurant after the incident in the cooler. Further, Hollar does not attempt to make a sham fact issue in her affidavit. She does not add new information or attempt to change what she said before; she merely restates more succinctly what she had stated in her deposition.

Thus, Coffey's motion to strike Paragraph 64 of Hollar's affidavit shall be denied.

### 3. Paragraph 78

In paragraph 78 of Hollar's affidavit, Hollar states, "I think Jean Schlenker told me that to try to scare me." Coffey argues that this paragraph should be stricken because Hollar has no personal knowledge of why Mrs. Schlenker made the statement.

Hollar, however, claims that paragraph 78 describes her own feelings and interpretation of Mrs. Schlenker's statement, and not Mrs. Schlenker's intentions. I agree. At the summary judgment stage, a court may consider affidavits based on the affiant's personal knowledge. Fed. R. Civ. P. 56(e). Because Hollar may validly interpret the context of a statement of which she has personal knowledge, Coffey's motion to strike Paragraph 78 of Hollar's affidavit shall be denied.

### B. Motion for Partial Summary Judgment

### 1. Standard of Review

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As the party moving for summary judgment, Coffey bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Hollar's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering Coffey's motion for summary judgment, I must accept Hollar's evidence as true and draw all reasonable inferences in her favor. *Id.* If, as the nonmoving party, however, Hollar fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, Coffey is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

### 2. Applicable Case Law

Under the Ohio Civil Rights Act, unlike under Title VII, 42 U.S.C.A. § 2000e-2, an individual supervisor may be held liable for discriminatory conduct. *Genaro v. Cent. Transp., Inc.*, 84 Ohio St. 3d 293, 300 (1999). Thus, in this case, Hollar may sue Coffey in his individual capacity for sexual harassment under Ohio law, though she may not do so under Title VII.

Ohio law, however, provides that a sexual harassment claim under the Ohio Civil Rights Act is generally analyzed in the same manner as one under Title VII. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196 (1981). Therefore, federal case law interpreting Title VII is applicable to Hollar's Ohio law claim.

7

### 3. Count One: Sexual Harassment

### a. Hostile Work Environment

Title VII prohibits sexual harassment caused by a hostile working environment. *Williams v. Gen Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). To establish a hostile work environment claim, a plaintiff must show that: 1) he or she is a member of a protected class; 2) he or she was subjected to unwelcome sexual harassment; 3) the harassment was based on his or her sex; 4) the harassment created a hostile work environment; and 5) the employer is vicariously liable. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341 (6th Cir. 2005).

In this case, Coffey claims that Hollar has failed to establish the fourth element of her prima facie case: namely, that Coffey's conduct created a hostile work environment. To satisfy this element, Coffey's conduct must have been "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Conduct that is merely offensive, however, is not actionable." *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004). Both a reasonable person and the victim must consider the conduct to be hostile. *Id*. Because Hollar has presented sufficient evidence indicating that Coffey's conduct was both objectively and subjectively hostile, a reasonable juror could find that a hostile work environment existed.

### i. Objective Standard

"[T]he 'severe or pervasive' requirement . . . reflects a unitary concept where deficiencies in the strength of one factor may be made up by the strength in the other." *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St. 3d 169, 181 (2000) (citation omitted). An incident that is extremely severe, such as a rape, does not require pervasiveness. Less severe conduct, however,

must have occurred with some frequency. *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 620 (6th Cir. 1986). "The harassment should be ongoing;" mere "isolated instances" are insufficient. *Clark*, 400 F.3d at 351-52. In *Clark*, the Court concluded that only three instances of harassment over a period of approximately two and a half years were insufficient to be severe or pervasive, but that seventeen instances during the same time period were sufficient to reverse the District Court's grant of summary judgment in favor of the defendant. *Id.*

Whether Coffey's conduct was severe or pervasive is "quintessentially a question of fact." *Crawford v. Medina General Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996) (quoting *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130-31 (4th Cir.1995)). "The court must consider the totality of the circumstances," and examine all incidents of harassment as a whole to determine whether a hostile work environment existed. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

While "no single factor is required" to establish a hostile work environment claim, courts consider several factors. *Harris*, 510 U.S. at 23. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* The plaintiff's job performance need not suffer, but the plaintiff must show that she had difficulty performing her work because of the harassment. *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988). Additionally, courts may consider whether the harassment was directed at the plaintiff, *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997), and whether the plaintiff suffered psychological harm as a result of the harassment. *Harris*, 510 U.S. at 23.

9

Many of the factors that contribute to a finding of an objectively hostile work environment are present in this case. Coffey's conduct was frequent during Hollar's initial period of employment and for the six months following her promotion to day manager. The rubbing against her and the forced kiss were both physically threatening. Hollar claims that Coffey's behavior interfered with her job performance, she was always nervous and uncomfortable around him, and she missed work to avoid him. Hollar does not allege any psychological harm, but this is not essential to a finding of a hostile work environment. *Id*. Last, Coffey's alleged behavior and comments were directed only at Hollar.

Coffey, however, claims that his behavior was not severe or pervasive enough to satisfy the objective standard for a hostile work environment. He concedes that forcibly kissing Hollar could be seen as severe, but that his behavior was not pervasive. Coffey compares the facts in this case to those in *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 1999) and *Schaber-Goa v. Dept. of Rehab.*, 2005 WL 1223891 (N.D. Ohio).[4] Coffey claims that the facts in those cases are similar to the facts at hand because both cases involve a single battery coupled with a few offensive remarks.

These cases, however, are distinguishable from the case at bar. During the entire period of Hollar's employment, Coffey made numerous – not a few – offensive and intimidating remarks to her. And he did so frequently, rather than occasionally.

---

[4]

In *Burnett*, a supervisor placed a pack of cigarettes inside the plaintiff's tank top and bra strap, and made two offensive remarks to her over a period of six months. 203 F.3d 980. In *Schaber-Goa*, the alleged incidents of harassment occurred in a single day. A supervisor poked the plaintiff in the crotch while he attempted to move a chair, got into an argument with her later that day regarding an unrelated incident, and when the plaintiff threatened to file an incident report, the supervisor grabbed her breast and told her to "put that in your incident report." 2005 WL 1223891, at *1.

The battery in this case involved force and more intimate touching. Indeed, the harassment alleged in this case is even more severe than that alleged in *Clark* in which the court concluded a triable issue existed with respect to the plaintiff's hostile work environment claim.

### ii. Subjective Standard

Hollar has created a genuine issue of material fact regarding whether the harassment was objectively hostile. She must also show, however, that the harassment was subjectively hostile: "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21-22.

Generally, courts that have concluded that a plaintiff did not subjectively perceive his or her environment to be hostile have relied on statements or conduct by the plaintiff clearly indicating that he or she did not find the harassment to be abusive. *See, e.g., Highlander v. K.F.C.*, 805 F.2d 644, 650 (6th Cir. 1986) (plaintiff stated that she did not think harassment was "that big of a deal," did not report it for months, and plaintiff's husband described it as "a joke."); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (plaintiff admitted that he did not consider the racial harassment a "big deal;" was not surprised, shocked or disturbed by it; and referred to it as "silly"); *Day v. Krystal*, 471 F. Supp. 2d 874 (E.D. Tenn. 2007) (plaintiff admitted during deposition that she did not consider any of the conduct that occurred during her term of employment with the defendant sexual harassment).

On the other hand, a plaintiff need not demonstrate that she found her working environment intolerably hostile to satisfy the subjective component. An "extreme level of distress is not required to prevail on a hostile-work-environment claim . . . [less severe] allegations . . . sufficed to show

11

that [plaintiff] subjectively perceived the work environment as hostile." *Hanley v. Chevy Chaser Magazine*, 2006 WL 2787036 (6th Cir.); *see also Chapman v. AmSouth Bank*, 2005 WL 3535150 (E.D. Tenn.) (holding that plaintiffs subjectively considered environment to be hostile when they described the harassment as making them feel "uncomfortable," "degraded," and "inferior"). "The subjective test must not be construed as requiring that a plaintiff feel physically threatened." *Williams*, 187 F.3d at 566 (6th Cir. 1999).

Indeed, even if a plaintiff delays in reporting harassment, he or she still may have subjectively perceived it to be abusive: " the subjective component of the prima facie case does not require that a plaintiff report a hostile work environment. A plaintiff can be subjected to sexual harassment sufficiently severe or pervasive as to constitute a hostile environment and yet, for a number of valid reasons, not report the harassment." *Lemmings v. Fed. Express Ground Package Sys.*, 2007 WL 1790697 (W.D. Tenn.) (finding that plaintiff did not report her harassment because the alleged harasser was her supervisor and she wanted to get along with him at work).

In this case, Coffey argues that Hollar did not subjectively consider her environment to be hostile. He points out that she returned to work for him even though she knew from her previous period of employment how he treated her. Moreover, she has only described his behavior as making her feel "uncomfortable" and "nervous."

Hollar, however, stated that she became increasingly uncomfortable at work as Coffey's aggressiveness escalated. She further stated that she "was always concerned about him touching [her] or saying things to [her]," and that she asked her boyfriend to come into the restaurant when Coffey would be there to discourage Coffey from continuing his behavior. She also alleged that Coffey's behavior interfered with her ability to do her work.

12

At no point has Hollar stated that she did not feel that Coffey's behavior was not serious or a joke, nor has she ever admitted that she did not feel that his behavior constituted harassment. Instead, she has maintained consistently that Coffey's behavior subjectively made her feel uncomfortable.

While Hollar did not report his behavior until years after it began, and returned to work for him after she had already been subjected to this behavior, Hollar's actions do not necessarily indicate that she did not subjectively perceive Coffey's behavior to be hostile. She has presented valid reasons for acting as she did: Coffey was her supervisor and part-owner of Coffey Cup, she was a single mother who needed a job to support her children, and his behavior significantly escalated in the last six months of her employment. Therefore, Hollar has presented enough evidence to create a genuine issue of material fact.[5]

### b. Quid Pro Quo Sexual Harassment

Hollar next alleges that she suffered a second type of sexual harassment: quid pro quo sexual harassment. Quid pro quo sexual harassment occurs where the employee's submission to sexual advances is a condition for receiving job benefits. *Kauffman v. Allied Signal, Inc.*, *Autolite Div.*, 970 F.2d 178, 182 (6th Cir. 1992).

A plaintiff bringing a quid pro quo sexual harassment claim must establish the following

---

[5]

In his brief, Coffey suggests a *McDonnell Douglas* burden-shifting defense applies to Hollar's hostile work environment claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In such a defense, after the plaintiff has made his or her prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for his or her actions. *Id.* The burden then shifts back to the plaintiff to show that the defendant's reason was a pretext for discrimination. *Id.* This defense, which is generally used in disparate treatment cases, is not appropriate in a hostile work environment context because there can be no legitimate reason for the creation of a hostile work environment.

Instead, two affirmative defenses are available to an employer defending against a hostile work environment claim. These are: 1) that the employer had no actual or constructive notice of the harassment; or 2) that the employer took adequate corrective action. *Vredevelt v. GEO Group, Inc.*, 2005 WL 1869607, at *11 (6th Cir.). Neither defense can be asserted by a defendant supervisor accused of perpetrating the harassment. *Harmon v. GZK, Inc.*, 2002 WL 191598 (Ohio App.).

elements:

1) He or she is a member of a protected class;

2) He or she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors;

3) The harassment complained of was on the basis of sex;

4) Submission to the unwelcome advances was an express or implied condition for receiving job benefits or the employee's refusal to submit to the supervisor's sexual advances resulted in a tangible job detriment; and

5) The existence of respondeat superior.

*McFarland v. Henderson*, 312 F. Supp. 2d 918, 921-22 (N.D. Ohio 2004) (citing *Bowman*, 220 F.3d, at 461).

Coffey concedes that Hollar can establish elements one,[6] two,[7] three,[8] and five[9] of this test.

Thus, to withstand Coffey's summary judgment motion on her quid pro quo claim, Hollar must

---

[6]

Hollar, a woman, is a member of a protected class. *McKenzie v. Wright State Univ.*, 114 Ohio App. 3d 437, 441 (1996) (stating that women are unquestionably a protected class under O.R.C. § 4112.02).

[7]

I must determine whether Hollar has presented sufficient evidence to permit a reasonable jury to conclude that she, by her conduct, indicated that the alleged sexual advances were unwelcome. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 68 (1986). Coffey arguably subjected Hollar to unwelcome sexual harassment by making numerous inappropriate comments, inappropriately touching her, and forcibly kissing her. Hollar felt uncomfortable at work and would occasionally be absent because she did not want to work with Coffey. She repeatedly refused his sexual advances. Hollar pushed Coffey away, left the restaurant, and vomited after he tried to kiss her in the cooler. Thus, Hollar has provided sufficient evidence that the harassment she allegedly suffered was unwelcome.

[8]

The harassment Hollar complains of was on the basis of sex. In *Meritor,* the Supreme Court held that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s] on the basis of sex." 477 U.S. at 64. It appears that Hollar would not have been subjected to the same treatment but for her sex because Coffey did not subject any males to any inappropriate or offensive behavior. Coffey was part owner of Coffey Cup and had the power to make employment decisions. Coffey also gave Hollar work directions and supervised her.

[9]

Respondeat superior liability exists because Coffey was co-owner of Coffey Cup. *See Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994) ("Where the complaint alleges 'quid pro quo' harassment, in which a supervisor demands sexual favors as a condition of job benefits, the employer is strictly liable under a respondeat superior theory."); *see also Wathen v. General Elec. Co.,* 115 F.3d 400, 405 (6th Cir. 1997).

provide evidence from which a reasonable jury could conclude either that 1) her submission to unwelcome advances was an express or implied condition for receiving job benefits, or 2) she suffered a tangible job detriment.

### i. Submission to Unwelcome Advances

Hollar argues that her employment was conditioned on submission to sexual advances because during the last six months of her employment, Coffey repeatedly told Hollar that the only reason she was still employed at Coffey Cup was because he was protecting her from being fired.

Coffey responds that he never conditioned Hollar's receipt of job benefits on her participation in any harassment and that Hollar has provided no evidence of any benefits he promised her in exchange for her submission to his alleged advances. Coffey asserts that Hollar was not constructively discharged because she did not give the Schlenkers time to investigate the matter or make any necessary alternative arrangements.

Because Coffey made only unfulfilled threats, Hollar cannot establish that she endured Coffey's unwelcome advances as an express or implied condition for receiving job benefits. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998).  Hollar never submitted to Coffey's alleged advances, and Coffey never took any adverse action against her. Thus, because Hollar cannot argue that her receipt of job benefits was conditioned on her participation in the harassment, she must demonstrate the existence of a tangible job detriment to survive Coffey's summary judgment motion on this claim.

### ii. Tangible Job Detriment

Hollar argues that she suffered a tangible job detriment because she was constructively discharged, a claim that Coffey denies. Hollar contends that the sexual harassment she endured

15

(culminating with Coffey's advances near the cooler) was so intolerable that she had no choice but to resign. She spoke with her supervisors, seeking help. Because Hollar believed that no changes would or could be made to her schedule to allow her to avoid Coffey, Hollar believed she no longer had a job.

A tangible job detriment is a "discharge, demotion or undesirable reassignment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998). "To rise to [a] level of a tangible job detriment, a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *McFarland*, 312 F. Supp. 2d at 922.

A plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged. *Logan v. Denny's Inc.*, 259 F.3d 558, 568 (6th Cir. 2001); s*ee also Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). Courts use the terms "tangible job detriment" and "materially adverse employment action" interchangeably. *McFarland*, 312 F. Supp. 2d, at 922.

The Ohio Supreme Court applies a one-prong objective test to determine when an employee has been constructively discharged. *Mauzy v. Kelly Servs*., 75 Ohio St. 3d at 588-89.[10] An employee has been constructively discharged when a reasonable person, under similar circumstances, would

---

[10] The claim before me is an Ohio statutory claim; thus, Ohio law applies. In contrast, the Sixth Circuit applies a two-prong test to determine when an employee has been constructively discharged. *See, e.g., Logan,* 259 F.3d at 567(6th Cir. 2001). The court in *Logan* held that constructive discharge claims require a showing that the working conditions were so bad that a reasonable person would have felt compelled to resign, and that the employer intended to cause the employee to resign or that the employee's resignation was a reasonably foreseeable consequence of the employer's actions. *Id.*; s*ee also Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982). Most other circuits use the one-prong objective test. *See e.g., McCann v. Litton Systems, Inc.*, 986 F.2d 946, 951 (5th Cir. 1993); *Spulak v. K Mart Corp*., 894 F.2d 1150, 1154 (10th Cir. 1990); *Levendos v. Stern Entertainment, Inc*., 860 F.2d 1227, 1230-31 (3rd Cir. 1988).

16

have felt compelled to resign. *Id.; see Scandinavian Health Spa, Inc. v. Ohio Civil Rights Comm.*, 64 Ohio App. 3d 480 (1990); *Wille v. Hunkar Labs., Inc.*, 132 Ohio App. 3d 92 (1998).

That Hollar may proceed on her hostile work environment claim is, in itself, insufficient to prove constructive discharge. *See Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Rather, a constructive discharge requires that conditions exceed "ordinary" discrimination; otherwise, a complaining employee is expected to remain on the job while seeking redress. *Dendinger v. Ohio,* 2006 WL 3311284, at *5 (Ohio App.) (quotation omitted) (holding that harassment was no worse than "ordinary" where employee alleged that it was clear her boss did not like female special agents, and the other males were condescending, rude, and mean).

Further, when an employee alleges constructive discharge, the employee's perception must be judged objectively, without consideration of his or her undue sensitivities. *Henry v. Lennox Indus. Inc.*, 768 F.2d 746, 752 n.3 (6th Cir. 1985). The employee has "an obligation not to assume the worst, and not to jump to conclusions too fast." *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 515 (Ohio App. 1991) (quoting *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987)).

I must, from the point of view of a reasonable member of the protected class, examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Simmons v. Miami Valley Trotting, Inc.,* 2006 WL 1000076, at *8 (S.D. Ohio) (quoting *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003)).

17

Hollar has presented sufficient evidence to create a genuine issue of material fact as to whether Coffey created working conditions so intolerable that a reasonable person in Hollar's position would have felt compelled to resign. *See, e.g, Scandinavian*, 64 Ohio App. 3d 480 (affirming court's conclusion that employee was constructively discharged where her employer made numerous requests of her for sex, grabbed her at her waist and on her buttocks, and invited her to sleep over at his house).

Hollar was subjected to repeated and persistent offensive sexual remarks on a daily basis, and Coffey allegedly had inappropriate and unwelcome bodily contact with her nearly every time the two worked together.[11] Coffey was co-owner of Coffey Cup; Hollar could not report his conduct to a higher authority. When Hollar did report the misconduct, her allegations were not taken seriously.

Viewing the facts in the light most favorable to Hollar, I conclude that a reasonable jury could find that she suffered a tangible job detriment because she had no choice but to resign. Thus, Coffey's summary judgment motion with respect to Hollar's quid pro quo claim shall be denied.

### 4. Count Two: Discharge in Violation of Public Policy

Generally, every employment relationship is terminable at the will of either party, and a discharge without cause does not give rise to an action for damages. *Collins v. Rizkana*, 73 Ohio St. 3d 65, 67-68 (1995) (citations omitted). This has become known as the "employment-at-will" doctrine. *Id.* at 68.

---

[11] Coffey Cup's lack of a sexual harassment policy may have contributed to Hollar's inability to curtail Coffey's advances. *See Simmons*, 2006 WL 1000076, at 8-9 (holding that a court may consider an employer's lack of sexual harassment policy in determining whether employee was constructively discharged).

18

In *Greeley v. Miami Valley Maint. Contractors, Inc*., 49 Ohio St. 3d 228, 228 (1990), *overruled in part by Tulloh v. Goodyear Atomic Corp*., 62 Ohio St. 3d 541 (1992), however, the Ohio Supreme Court recognized a public policy exception to the employment-at-will doctrine. The Court held that an employee terminated in violation of a statute could sue his or her employer in tort for wrongful discharge in violation of public policy. *Id*. The Ohio Supreme Court later expanded this tort, generally known as a "*Greeley* claim," *Langley v. DaimlerChrysler Corp*., 407 F. Supp. 2d 897, 907 (N.D. Ohio 2005), to encompass public policy embodied not only in statutes, but also in the Ohio and the United States Constitutions, administrative rules and regulations, and the common law, *see Painter v. Graley,* 70 Ohio St. 3d 377, 384 (1994).

A plaintiff bringing an action for wrongful discharge in violation of public policy must satisfy the following four elements: 1) A clear public policy is manifested in the Ohio or United States Constitutions, statutes or administrative regulations, or common law (clarity element); 2) Dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize this public policy (jeopardy element); 3) The plaintiff's dismissal was motivated by conduct related to the public policy (causation element); and 4) The employer lacked an overriding legitimate business justification for the dismissal (overriding justification element). *Collins*, 73 Ohio St. 3d at 69-70 (citing H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U. Cin. L. Rev. 397, 398-99 (1989)).

The clarity and jeopardy elements are questions of law, while the causation and overriding justification elements are questions of fact. *Collins*, 73 Ohio St. 3d at 70.

Hollar relies on the public policy against sexual harassment, as codified in the Ohio Civil Rights Act (O.R.C. § 4112.02), as the basis for her wrongful discharge claim. A public policy

19

against sexual harassment exists, and Ohio courts permit a plaintiff to raise a *Greeley* claim based on Ohio's public policy against sexual harassment. *Collins*, 73 Ohio St. 3d at 74. Therefore, Hollar satisfies the clarity element.

Hollar's *Greeley* claim fails, however, because Hollar cannot satisfy the jeopardy element. To satisfy the jeopardy element, a plaintiff must establish that the purpose of the statute would be seriously compromised if the court does not permit the plaintiff to proceed with his or her *Greeley* claim. *See Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244 (2002). This analysis "necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Id*. If a remedy for O.R.C. § 4112.02 violations exists and "adequately protects society's interests," a court need not recognize a *Greeley* claim based solely on the statute. *Id*.

If, however, the statute does not provide adequate remedies, society's interests will not be protected by those remedies, and a court should allow the *Greeley* claim to proceed. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 155 (1997) (holding that the remedies available under Ohio's Whistleblower Statute are inadequate to fully compensate an employee who is discharged in violation of the statute). Similarly, a court should permit a *Greeley* claim to proceed where: 1) a plaintiff relies on the public policy embodied in a particular statute; 2) the plaintiff cannot pursue a *Greeley* claim because he or she cannot satisfy one of the statute's requirements; and 3) the statute does not preempt common law remedies. *Collins*, 73 Ohio St. 3d at 660-61 (holding that a *Greeley* claim could proceed where, although plaintiff was sexually harassed, she could not make a claim under O.R.C. § 4112.02 because her employer did not meet the definition of "employer" under § 4112.01).

20

Further, if a plaintiff can rest on more than one statute to support his or her claim, and one of those statutes does not provide an adequate remedy, a plaintiff may still pursue a *Greeley* claim. *Collins*, 73 Ohio St. 3d at 660. "In cases of *multiple*-source public policy, the statute containing the right and remedy will not foreclose recognition of the tort on the basis of some other source of public policy, unless it was the legislature's intent in enacting the statute to preempt common-law remedies." *Id*.

The Ohio Civil Rights Act provides a plaintiff with a very broad remedy that may include damages, injunctive relief, or other appropriate relief. O.R.C. § 4112.99. This remedy is even broader than the remedy provided by the FMLA, which the Ohio Supreme Court concluded was sufficient to protect society's interests, and which did not need to be supplemented by an FMLA *Greeley* claim. *See Wiles,* 96 Ohio St. 3d. at 248. Because the Ohio Civil Rights Act – the only statute on which Hollar relies to support her *Greeley* claim – contains a sufficient remedy, a *Greeley* claim based on the public policy underlying the Act would be redundant and is not necessary to protect society's interests.

Thus, because Hollar's *Greeley* claim does not satisfy the jeopardy requirement, I need not address the causation and overriding justification elements. The defendant's summary judgment motion with respect to Hollar's wrongful discharge claim shall be granted.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendant Coffey's motion to strike be, and the same hereby is, denied; and

2. Defendant Coffey's motion for summary judgment be, and the same hereby is, denied with respect to Count One (Sexual Harassment) and granted with respect to Count Five (Discharge in Violation of Public Policy).

So ordered.

s/James G. Carr
James G. Carr
Chief Judge